UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN PRATT,

Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT ("NYPD")
OFFICER LAMAR L. WARNER, shield number
25457, in his individual capacity; NYPD
OFFICER RANDY ARACENAVILLAFANA,
shield number 4861, in his individual capacity;
NYPD OFFICER MARTA P. CIELEPA, shield
number 6941, in her individual capacity; NYPD
OFFICER VICTOR LEE, shield number 12722,
in his individual capacity; NYPD OFFICER
RONNIE L. ROMAN, shield number 21519, in
his individual capacity; and NYPD SERGEANT
DINA O. FRANTZIS, shield number 3195, in her
individual capacity; and NYPD OFFICERS
"JOHN DOE" #1-5, in their individual capacities,

Defendants.

No. 25-cv_____

**COMPLAINT AND
JURY DEMAND**

Plaintiff Benjamin Pratt, by and through his attorneys, Emery Celli Brinckerhoff Abady

Ward & Maazel LLP, alleges and states as follows:

**NEW YORK CITY POLICE DEPARTMENT BEATS UNARMED MAN**

1.      On the morning of November 9, 2024, Defendant New York City Police

Department ("NYPD") Officer Lamar L. Warner lunged at Benjamin Pratt suddenly and without

warning, and immediately began punching Mr. Pratt in the head, face, and arms until he drew

blood.

2.      This brutal attack was unprovoked. That morning Mr. Pratt was experiencing an

acute mental health episode that rendered him disoriented but not violent. Mr. Pratt wandered

1

into an apartment building in Manhattan to find refuge from the cold. A resident called the police to report someone she did not know in the building.

3.    When Officer Warner first saw Mr. Pratt walking out of an unoccupied apartment, Officer Warner charged Mr. Pratt and punched him over and over again.

4.    Upon information and belief, five additional responding officers—Defendants Officers Randy Aracenavillafana, Marta P. Cielepa, Victor Lee, Ronnie L. Roman, and Sergeant Dina O. Frantzis—immediately arrived at the scene, stood idly by while Defendant Warner attacked Mr. Pratt, and did nothing to intervene to stop the beating.

5.    Then, the officers handcuffed Mr. Pratt, dragged him into the hallway, and pinned him against a wall before throwing him to the ground.

6.    As a result of this vicious and gratuitous use of physical force, Mr. Pratt was so seriously injured that he was hospitalized for four nights. Mr. Pratt sustained a serious injury to his finger, as well as lacerations to the back of his head, bruising to his forehead, and a black eye, and required emergency treatment for a life-threatening bacterial infection.

7.    Upon information and belief, the hospital discharged Mr. Pratt to NYPD custody on November 13, 2024, under medical instruction that Mr. Pratt immediately fill a prescription for and take his prescribed oral antibiotics.

8.    Instead, Officers John Doe 1 and John Doe 2 transported Mr. Pratt to central booking, where they, along with John Does 3-5, ignored Mr. Pratt's rapidly worsening infection, ignored requests that he be given his prescribed antibiotics, ignored medical instructions that Mr. Pratt be given his medication immediately, and detained Mr. Pratt overnight without giving him his medication or allowing him to seek medical attention. The next day, a criminal defense

attorney had to intervene and request that NYPD officers transport Mr. Pratt back to a hospital, where he again had to be treated with antibiotics for his life-threatening infection.

9.    On November 9, 2024, what Mr. Pratt needed was compassion and help. Instead, he was met with indignity and violence. Defendants' actions represent a long-standing culture of excessive force against New Yorkers experiencing mental health crises.

10.    Mr. Pratt now brings this action to hold Defendants accountable for violating his constitutional rights by subjecting him to brutal, excessive force; failing to intervene to stop the use of excessive force; and their subsequent failure to provide necessary medical care for the injuries they caused him.

## PARTIES

11.    Plaintiff Benjamin Pratt is a citizen of the United States who currently, and at all times relevant to the Complaint, lives in Manhattan, New York.

12.    Defendant City of New York (the "City") is a municipal corporation duly organized under the laws of the State of New York. At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel.

13.    Defendant Lamar L. Warner, shield number 25457, was at all times relevant to this Complaint a police officer employed by the City of New York. In this role, Officer Warner was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he acted within the scope of his employment and under color of state law. Defendant Warner is sued in his individual capacity.

3

14.     Defendant Randy Aracenavillafana, shield number 4861, was at all times relevant to this Complaint a police officer employed by the City of New York. In this role, Officer Aracenavillafana was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he acted within the scope of his employment and under color of state law. Defendant Aracenavillafana is sued in his individual capacity.

15.     Defendant Marta P. Cielepa, shield number 6941, was at all times relevant to this Complaint a police officer employed by the City of New York. In this role, Officer Cielepa was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, she acted within the scope of her employment and under color of state law. Defendant Cielepa is sued in her individual capacity.

16.     Defendant Victor Lee, shield number 12722, was at all times relevant to this Complaint a police officer employed by the City of New York. In this role, Officer Lee was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he acted within the scope of his employment and under color of state law. Defendant Lee is sued in his individual capacity.

17.     Defendant Ronnie L. Roman, shield number 21519, was at all times relevant to this Complaint, a police officer employed by the City of New York. In this role, Officer Roman was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he acted within the scope of his employment and under color of state law. Defendant Roman is sued in his individual capacity.

18.     Defendant Dina O. Frantzis (née Talavera), shield number 3195, was at all times relevant to this Complaint a police sergeant employed by the City of New York. In this role, Sergeant Frantzis was a duly appointed and acting officer, servant, employee, and/or agent of the

4

City of New York. At all relevant times, she acted within the scope of her employment and under color of state law. Defendant Frantzis is sued in her individual capacity.

19.     Defendants Officers John Does #1-5, names and shield numbers unknown, were each at all relevant times officers of the NYPD, and each was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, Defendants Does #1-5 acted within the scope of their employment and under color of state law. The Doe Defendants are sued in their individual capacities.

## JURISDICTION

20.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, New York City Administrative Code § 8-803, and state common law.

21.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

22.     The Court has supplemental jurisdiction over Mr. Pratt's claims brought under state and city law pursuant to 28 U.S.C. § 1367(a).

## VENUE

23.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of the State of New York.

## JURY DEMAND

24.     Mr. Pratt demands a trial by jury.

## FACTS

### Mr. Pratt Background

25.     Mr. Pratt, currently 36 years old, has lived in Manhattan since 2007.

26.     Mr. Pratt studied Philosophy at New York University, graduating with Highest Honors in 2011.

27.     In 2016, Mr. Pratt founded a celebrated and award-winning craft beer bar that he operated until 2024.

28.     An avid runner and ultramarathoner, Mr. Pratt is also the founder of a New York-based run club.

29.     In or around the fall of 2024, Mr. Pratt experienced a mental health crisis.

30.     As a result of the mental health crisis, Mr. Pratt experienced symptoms of disorientation and dissociation, often finding himself unaware of where he was or how he got there.

### *The Morning of November 9, 2024*

31.     As a result of his mental health crisis, Mr. Pratt was living on the street in early November 2024.

32.     On the morning of November 9, 2024, Mr. Pratt was cold, tired, disoriented, and in need of a place to warm up.

33.     Mr. Pratt was thinly clothed, wearing only running gear—orange shorts, a white T-shirt, sunglasses, gloves, and sneakers.

34.     At or around 9:30 AM that morning, Mr. Pratt walked into an apartment building located at 780 Greenwich Street in Manhattan.

35.     Upon information and belief, a resident called the police to report Mr. Pratt's presence in the building.

36.     Upon information and belief, no one reported that Mr. Pratt was armed.

37.     Upon information and belief, no one reported that Mr. Pratt was violent.

38.     Upon information and belief, Defendant Officers Lamar L. Warner, Randy Aracenavillafana, Marta P. Cielepa, Victor Lee, Ronnie L. Roman, and Sergeant Dina Frantzis (collectively, "Individual Defendants") arrived at 780 Greenwich Street around 9:50 AM.

39.     For several minutes, Officers Warner and Lee walked calmly outside and around the apartment building.

40.     Officers Warner and Lee talked calmly to residents both outside and inside of the building, asking them how to access different areas of the building and whether they knew what Mr. Pratt looked like.

41.     In the stairwell, Officers Warner and Lee encountered a female resident, who mentioned seeing a man with orange shorts on the sixth floor.

42.     Upon information and belief, she did not report being afraid.

43.     Upon information and belief, Officers Warner and Lee followed the superintendent of the building to the roof and then back down to the sixth floor.

44.     Just after 10:03 AM, Mr. Pratt walked out of an unoccupied apartment on the sixth floor, where he had found temporary shelter.

45.     Unprovoked and without saying a word, Officer Warner charged at Mr. Pratt, physically catapulting him back into the apartment and into a loaded moving cart.

46.     Officer Warner then got on top of Mr. Pratt and threw repeated punches to Mr. Pratt's head and face, forcing Mr. Pratt onto his back between a wall and bulky furniture.

7

47.  Officer Warner continued to throw punches at Mr. Pratt, who tried to protect his face with his bare hands.

48.  After Mr. Pratt was immobilized, bruised, and bleeding, Officer Warner for the first time instructed Mr. Pratt not to move and to put his hands up.

49.  Upon information and belief, Officers Lee, Roman, Aracenavillafana, Cielepa, and Sergeant Frantzis joined Officer Warner at the unoccupied apartment on the sixth floor, where they stood by and watched Officer Warner repeatedly punch Mr. Pratt.

50.  Officer Lee did not intervene to prevent Officer Warner's excessive force.

51.  Officer Roman did not intervene to prevent Officer Warner's excessive force.

52.  Officer Aracenavillafana did not intervene to prevent Officer Warner's excessive force.

53.  Officer Cielepa did not intervene to prevent Officer Warner's excessive force.

54.  Sergeant Frantzis did not intervene to prevent Officer Warner's excessive force.

55.  After tackling him and forcing him onto his stomach, the Individual Defendants handcuffed Mr. Pratt.

56.  The Individual Defendants then shoved Mr. Pratt out of the apartment and into a hallway, where they pinned Mr. Pratt up against a wall.

57.  In the hallway, the Individual Defendants wrestled Mr. Pratt to the ground again.

58.  Mr. Pratt attempted to comply with the officers, pleading with them, and trying to calm himself down.

59.  Mr. Pratt thought he was going to die during the attack.

*Mr. Pratt Sustains Injuries Requiring Hospitalization*

60.     As a result of the attacks, Mr. Pratt sustained lacerations to the back of his head,

bruising to his forehead, a black eye, as well as a serious injury to his finger.



*Figure 1: Benjamin Pratt's Head*
*11/09/2024* (NYPD)

61.     Upon information and belief, the Individual Defendants took Mr. Pratt into

custody and transported him to Mount Sinai Hospital on November 9, 2024.

62.     Mr. Pratt remained hospitalized in police custody from November 9, 2024, until

November 13, 2024, prior to an arraignment.

63.     As a result of the attacks, Mr. Pratt sustained deep cuts to his left hand and his left

index finger swelled two to two-and-a half times its normal size.

64.     Mr. Pratt's left index finger became infected immediately.

9



*Figure 2: Benjamin Pratt's Left Hand Image #1*
*11/09/2024* (NYPD)



*Figure 3: Benjamin Pratt's Left Hand Image #2*
*11/09/2024* (NYPD)

65. At the hospital, medical staff treated Mr. Pratt for cellulitis, a life-threatening bacterial infection, with both intravenous and oral antibiotics.

66. Medical staff at Mount Sinai Hospital conducted surgery on his finger to drain the fluids.

67. As a result of injuries to his head, Mr. Pratt suffered significant bruising, headaches, and swelling to his head and face.

***Defendants Deprive Mr. Pratt of Medication Requiring Re-Hospitalization***

68. Upon information and belief, the hospital discharged Mr. Pratt to NYPD custody on the afternoon of November 13, 2024, under medical instruction that Mr. Pratt begin a two-week cycle of antibiotics immediately.

69. Does #1-2 were present when medical staff provided Mr. Pratt with the prescription for oral antibiotics.

70. Does #1-2 were present when medical staff provided strict instruction that the oral antibiotics prescription needed to be filled immediately.

71. Does #1-2 transported Mr. Pratt to central booking, where Doe #1 escorted Mr. Pratt through the intake process.

72. Doe #1 brought Mr. Pratt to the holding cell around 9:00 PM, where Mr. Pratt remained until approximately 1:00 AM without medical attention.

73. Neither Doe #1 nor Doe #2 filled Mr. Pratt's prescription, gave Mr. Pratt a copy of his prescription, or, upon information and belief, told anyone that Mr. Pratt had a prescription that needed to be filled immediately.

74. While in the holding area, Doe #3 observed the injury to Mr. Pratt's finger, which had begun to re-swell.

75. Mr. Pratt brought his injury and need for medical intervention to the attention of Doe #3.

76. Doe #3 did not intervene to provide Mr. Pratt with medical attention.

77. As Mr. Pratt waited in the holding area, Mr. Pratt's partner repeatedly approached officers on duty in the courtroom, including Doe #4, alerting him that Mr. Pratt needed immediate medical attention for his finger and the infection.

78. Doe #4 dismissed Mr. Pratt's partner's concerns, saying there was nothing that could be done before the next morning.

79. Does #1-4 did not intervene to ensure that Mr. Pratt received the antibiotics he was under strict instruction to begin immediately.

80. Mr. Pratt was detained overnight without medical attention.

81. Mr. Pratt's infection from his finger worsened rapidly overnight and his hand re-swelled.

82. By the next morning—November 14, 2024—Mr. Pratt's entire left hand was swollen and his left index finger was engorged, inflamed, and purple—oozing with puss.

83. Doe #5 observed Mr. Pratt's hand as he applied handcuffs and transported Mr. Pratt to the courtroom for his arraignment.

84. Doe #5 did not intervene to ensure that Mr. Pratt received medical attention.

85. While Mr. Pratt waited to be arraigned that morning, a criminal defense attorney intervened to force NYPD to rush Mr. Pratt from central booking to the emergency room at New York Presbyterian Hospital.

86. Mr. Pratt had been without his antibiotics for close to 20 hours.

87. Mr. Pratt suffered physically from a rapidly worsening infection as a result of not taking his antibiotics or receiving any medical care.

88.     Mr. Pratt suffered emotional distress as a result of knowingly being deprived of and denied necessary medical care.

89.     At New York Presbyterian, Mr. Pratt was treated with antibiotics he should have received earlier.

*Mr. Pratt Continues to Suffer the Consequences of Defendants' Conduct*

90.     Mr. Pratt has experienced significant physical and psychological distress because of Defendants' unprovoked and unjustified attack.

91.     In addition to his physical injuries, Mr. Pratt has experienced significant emotional distress as a result of the beating, including flashbacks, nightmares, and hypervigilance around police officers.

*Manhattan District Attorney and Civilian Complaint Review Board Both Open Independent Investigations*

92.     The Police Accountability Unit ("PAU") of the Manhattan District Attorney's Office is actively investigating the events giving rise to the claim.

93.     In July 2025, the PAU notified Mr. Pratt that it was investigating the conduct of the Individual Defendants on November 9, 2024, giving rise to Mr. Pratt's claim for excessive force.

94.     That same month, the PAU called Mr. Pratt in for an interview.

95.     The Civilian Complaint Review Board is also investigating the conduct of the Individual Defendants on November 9, 2024, giving rise to Mr. Pratt's claim for excessive force.

*Mr. Pratt Files a Notice of Claim*

96.     On October 8, 2025, Mr. Pratt sought leave from the Supreme Court of the State of New York, pursuant to New York General Municipal Law § 50-e(5), to file a late notice of

13

claim for all state and local law claims against the City of New York and the Individual

Defendants.

97.     The Supreme Court granted Mr. Pratt's petition for leave to file a late notice of

claim on November 7, 2025.

98.     Mr. Pratt commenced this action within one year and ninety days of the events

upon which the claims are based.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Excessive Force
(Against Individual Defendants)

99.     Mr. Pratt repeats and re-alleges the above paragraphs as if the same were fully set

forth at length herein.

100.    By reason of the foregoing, and by throwing, striking, pushing, tackling,

manhandling, pinning to the ground, and forcefully restraining Mr. Pratt, the Individual

Defendants used unreasonable and excessive force under the circumstances they confronted.

Unprovoked, Officer Warner charged at Mr. Pratt, mounted him, and threw repeated punches to

Mr. Pratt's head and face. Officers Aracenavillafana, Cielepa, Lee, Roman, and Sergeant

Frantzis stood by and witnessed Officer Warner beating Mr. Pratt. None of the Individual

Defendants intervened. After tackling him and forcing him onto his stomach, the Individual

Defendants handcuffed Mr. Pratt, shoved Mr. Pratt out of the apartment and into a hallway, and

pinned him up against a wall before throwing him again to the ground.

101.    At all relevant times, the Individual Defendants acted under color of state law

within the scope of their employment as police officers for the New York City Police

Department.

102.    Mr. Pratt did not pose any threat to anyone's safety and was unarmed.

103.    The Individual Defendants acted beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers to willfully, knowingly, wantonly, and with callous disregard for Mr. Pratt's constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution. Punching Mr. Pratt repeatedly in the head, pinning him against a wall, and throwing Mr. Pratt to the ground were gratuitous uses of force that were vastly out of proportion to any danger Mr. Pratt could have posed.

104.    The Individual Defendants failed to take any steps to prevent the excessive force used on Mr. Pratt or to intervene at any point during his beating, though they had every opportunity to do so.

105.    As a direct and proximate result of the Individual Defendants' misconduct detailed above, Mr. Pratt sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourteenth Amendment
Substantive Due Process - Deliberate Indifference to Serious Medical Needs
(Against Does #1-5)

106.    Mr. Pratt repeats and re-alleges the above paragraphs as if the same were fully set forth at length herein.

107.    At all relevant times, Does #1-5 acted under color of state law within the scope of their employment as police officers for the New York City Police Department.

108.    Mr. Pratt was in the custody of the NYPD, under the supervision of Defendant Does #1-5, and as such, Defendants Does #1-5 had an affirmative duty to care for and protect Mr. Pratt under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

109.    Does #1-5 breached that duty. Does #1-5's actions and omissions were a substantial departure from the exercise of reasonable professional judgment, practice and

15

standards, were grossly negligent, and amounted to deliberate indifference to Mr. Pratt's health and welfare.

110.    Does #1-5 acted with deliberate indifference to, and callous disregard for, Mr. Pratt's severe injuries and his need to take medication, about which Mr. Pratt and others complained to Defendants repeatedly.

111.    Does #1-5's disregard of the seriousness of Mr. Pratt's injuries; their failure to provide him with the antibiotics he had been prescribed; their failure to send him to a medical professional for evaluation; and all their other conduct set forth above exhibited deliberate indifference to, and callous disregard for the safety, well-being, and civil rights of Mr. Pratt, proximately causing him substantial and unnecessary physical and emotional harm.

112.    By virtue of the foregoing, Does #1-5 deprived Mr. Pratt of clearly-established rights protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Mr. Pratt sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
Common Law Assault
(Against Individual Defendants and City of New York)

113.    Mr. Pratt repeats and re-alleges the above paragraphs as if the same were fully set forth at length herein.

114.    By reason of the foregoing, the Individual Defendants, acting in their capacity as police officers for the New York City Police Department and within the scope of their employment as such, intentionally placed Mr. Pratt in apprehension of an imminent offensive contact and displayed the ability to effectuate such contact, and thereby committed a willful, unlawful, unwarranted, and intentional assault upon Mr. Pratt.

115.    The assault committed by the Individual Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted unreasonable and excessive use of force.

116.    Defendant City of New York, as the employer of the Individual Defendants, is liable for their use of excessive force against Mr. Pratt under the doctrine of *respondent superior* because the Individual Defendants acted within the scope of their employment for the City of New York.

117.    As a direct and proximate result of the misconduct of the Individual Defendants detailed above, Mr. Pratt sustained the damages herein before alleged.

**FOURTH CAUSE OF ACTION**
Common Law Battery
(Against Individual Defendants and City of New York)

118.    Mr. Pratt repeats and re-alleges the above paragraphs as if the same were fully set forth at length herein.

119.    By reason of the foregoing, and by throwing, striking, pushing, tackling, manhandling, pinning to the ground, and forcefully restraining Mr. Pratt, the Individual Defendants, acting in their capacity as police officers for the New York City Police Department and within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Mr. Pratt.

120.    The battery committed by the Individual Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

121.    Defendant City of New York, as the employer of the Individual Defendants, is liable for their wrongdoing under the doctrine of *respondeat superior* because the Individual Defendants acted within the scope of their employment for the City of New York.

17

122. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Pratt sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
Common Law Negligence/Denial of Medical Care
(Against DOES #1-5 and City of New York)

123. Mr. Pratt repeats and re-alleges the above paragraphs as if the same were fully set forth at length herein.

124. At all times relevant to this Complaint, Defendant Does #1-5 owed a duty to Mr. Pratt to meet the standard of care owed to people detained before trial and/or to ensure that those under their supervision were trained adequately regarding the proper care of such detained people.

125. Defendant Does #1-5 negligently and/or wantonly breached and violated this standard of care, or caused it to be violated, by the foregoing, and by denying Mr. Pratt access to adequate and necessary medical care, failing and refusing to provide medical treatment, and/or otherwise neglecting Mr. Pratt's medical needs. Does #1-5 abused their power and failed to perform their duties in good faith. That required, among other things, responding to requests for medical intervention and facilitating proper treatment of Mr. Pratt's injuries, including ensuring that Mr. Pratt had access to medically necessary antibiotics for a life-threatening infection.

126. Defendant City of New York, as employer of the Does #1-5, is responsible for their wrongdoing under the doctrine of *respondeat superior* because Does #1-5 acted within the scope of their employment for the City of New York.

127. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Pratt sustained the damages hereinbefore alleged.

**SIXTH CAUSE OF ACTION**
NYC Administrative Code Chap. 8 § 8-803
Excessive Force
(Against Individual Defendants and City of New York)

128.    Mr. Pratt repeats and re-alleges the above paragraphs as if the same were fully set forth at length herein.

129.    By reason of the foregoing, and by throwing, striking, pushing, tackling, manhandling, pinning to the ground, and forcefully restraining Mr. Pratt, the Individual Defendants used unreasonable and excessive force under the circumstances they confronted.

130.    At all relevant times, the Individual Defendants acted under color of state law within the scope of their employment as police officers for the New York City Police Department.

131.    Defendant City of New York and the Individual Defendants failed to intervene when they had an opportunity to do so.

132.    Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under NYC Administrative Code Chap. 8 § 8-803(b).

133.    As a direct and proximate cause of the misconduct and abuse of authority detailed above, Mr. Pratt sustained the damages hereinbefore alleged.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Pratt respectfully requests that the Court grant him the relief requested as follows:

A.    Compensatory damages in an amount to be determined at trial;

B.    Punitive damages in an amount to be determined at trial;

C.    An award of attorneys' fees and costs incurred in this action; and

D.    Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      November 7, 2025

EMERY  CELLI  BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:  s/ Bianca Herlitz-Ferguson

    Samuel Shapiro
    Bianca Herlitz-Ferguson
    sshapiro@ecbawm.com
    bherlitz-ferguson@ecbawm.com
    One Rockefeller Plaza, 8th Floor
    New York, New York 10020
    (212) 763-5000

    *Attorneys for Plaintiff*